748 A.2d 106 (2000)
329 N.J. Super. 371
STATE of New Jersey, Plaintiff-Respondent,
v.
Rudy BELLAMY, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued March 14, 2000.
Decided March 29, 2000.
*107 Adam W. Toraya, Designated Counsel, for defendant-appellant (Ivelisse Torres, Public Defender, attorney; Mr. Toraya of counsel and on the brief).
Susan W. Sciacca, Deputy First Assistant Prosecutor, for plaintiff-respondent (William H. Schmidt, Bergen County Prosecutor, attorney; Ms. Sciacca of counsel and on the brief).
Before Judges PRESSLER, KIMMELMAN and CIANCIA.
The opinion of the court was delivered by CIANCIA, J.A.D.
Defendant Rudy Bellamy and co-defendant William Green were indicted on charges of possessing more than five ounces of cocaine with intent to distribute, N.J.S.A. 2C:35-5a(1) and 5b(1) (count one), as well as simple possession of cocaine, N.J.S.A. 2C:35-10a(1) (count two). The day before their joint trial was to begin Green entered a guilty plea, without benefit of a plea agreement, and subsequently testified against defendant in the two-day trial that immediately followed. The jury found defendant guilty on both counts. For purposes of sentencing count two was merged into count one. Defendant was sentenced to thirteen years imprisonment with a four and one-half-year parole disqualifier. Appropriate fines, fees and penalties were imposed, as well as a suspension of driving privileges.
On appeal defendant raises the following issues:
*108 POINT 1 THE COURT ERRED IN FAILING TO GRANT DEFENDANT'S REQUEST FOR AN ADJOURNMENT TO INVESTIGATE THE EXISTENCE AND POSSIBLE TESTIMONY OF AN ALLEGED UNINDICTED INDIVIDUAL WHOM THE DEFENDANT WAS CHARGED AS AN ACCOMPLICE
POINT 2 STATEMENTS MADE BY THE PROSECUTOR DURING CLOSING ARGUMENTS RESULTED IN SUBSTANTIAL PREJUDICE TO DEFENDANT'S FUNDAMENTAL RIGHT TO HAVE THE JURY FAIRLY ASSESS THE CASE AGAINST HIM
POINT 3 DEFENDANT WAS DENIED A FAIR TRIAL DUE TO IMPROPER JURY INSTRUCTIONS
A. THE JUDGE COMMITTED REVERSIBLE ERROR BY INSTRUCTING THE JURY THAT THEY COULD FIND THE DEFENDANT GUILTY AS AN ACCOMPLICE TO EDDIE WILLIAMS
B. THE COURT FAILED TO ADEQUATELY INSTRUCT THE JURORS THAT THE DEFENDANT MUST BE FOUND NOT GUILTY IF THEY FIND REASONABLE DOUBT AS TO HIS MENTAL STATE
C. THE COURT FAILED TO ADEQUATELY RESPOND TO THE JURY QUESTION REGARDING THE DEFENDANT'S PRIOR RECORD AND IN DOING SO DEPRIVED THE JURY WITH ADEQUATE INSTRUCTIONS, AND PREVENTED THE DEFENDANT FROM RECEIVING A FAIR TRIAL
POINT 4 SENTENCE IMPOSED WAS MANIFESTLY EXCESSIVE
We find merit in defendant's contention that in light of Green's version of the facts revealed for the first time immediately prior to trial, the trial judge should have granted a short adjournment as defendant requested.
For purposes of this issue the relevant evidence is as follows. On June 1, 1996, at about 6:00 p.m., defendant was driving his car on Route 80 with Green as a passenger when they were stopped by the State Police because the vehicle shifted lanes without signaling and at one point drifted onto the shoulder of the road. Once stopped, defendant exited the driver's seat and engaged in a colloquy with the trooper. Green was apparently asleep in the front passenger seat. Because defendant was extremely nervous the trooper called for assistance. Upon arrival of the second trooper, Green woke up and was questioned about where he and defendant had been. Defendant was asked a similar question and the answer he gave differed somewhat from that given by Green although both men acknowledged they were returning from New York City. Defendant was asked for permission to search the car and he gave it by signing the appropriate form. Green was asked to step out of the car and after he did so the troopers found a brown bag wrapped with duct tape on the front passenger side of the vehicle. At the time the bag was discovered its location was such that it would have been observable by the driver. Inside the bag was a substance later determined to be slightly under eight ounces of cocaine. Defendant's position at all relevant times, including when he testified at trial, was that he had been unaware of the package and the drugs it contained.
When Green entered his guilty plea just before the start of defendant's trial, his factual basis, for the first time, mentioned an Eddie Williams as the prime mover behind the drug transaction. Green claimed Williams solicited and hired defendant and himself to travel to New York and pick up drugs for Williams. According to Green, he and defendant followed Williams into New York to a specific location in Manhattan where defendant and Williams went into a store. Green went to *109 sleep but nevertheless saw defendant and Williams come out of the store with a package. Defendant got back into the car and put the package between his legs. The next time Green saw that package it was under his seat and a trooper was asking him questions. Green said he and defendant both knew they were going to pick up drugs that would later be distributed.
Prior to Green's statements in support of his guilty plea, the State was unaware of Eddie Williams or any involvement he may have had in the drug transaction. Defendant also claimed not to know any Eddie Williams and not to have known of Green's version of events until uttered as part of the plea. Defense counsel requested an adjournment of the trial scheduled to start the next day or alternatively that Williams not be mentioned in Green's testimony. The requests were denied apparently on the basis that defendant knew or should have known about the existence of Eddie Williams. The judge stated:
So therefore he [defendant] would know better if anything than the State so I'm not going to grand [sic] a continuance on this because he had plenty of time to find this out, to talk with the co-defendant [Green] and the co-defendant said the three were together and they followed him. So because of that I'm not going to delay this trial one day longer.
Trial began the next day. Green testified for the State, providing the version of events he had given the day before, but adding certain embellishments such as he and defendant going to Williams' house before leaving for New York in order to get part of the money Williams had promised them. Green's testimony wove Williams into every aspect of the drug transaction from the initial plan to the pick up in New York City. When defendant took the stand he testified, among other things, that he had no knowledge of the drugs, did not know an Eddie Williams and had not spoken to anyone named Eddie Williams.
The prosecutor's closing arguments contained statements concerning guilt as an accomplice. At the prosecutor's request and over objection of the defendant, the court charged that defendant could be found guilty as an accomplice of Eddie Williams. After the jury began deliberations it requested a recharge on the law of accomplice liability.
We are persuaded that the failure to grant defendant a short adjournment of trial under the circumstances here presented constituted an abuse of discretion. That is to say, we believe that compelling defendant to go to trial with virtually no opportunity to investigate the existence or actions of Eddie Williams had the very real potential of denying defendant a fair trial. Contrary to the State's position, we believe the "Williams' component" was not only important to the State's case but it could have been pivotal in the eyes of the jury. Green's version of events, if credited, totally vitiated defendant's claims of ignorance and innocence. It is one thing to have two men picked up with a brown taped bag and have each deny knowledge of its existence or at least of its illicit contents. It is quite another thing to lay out a plan engineered by a third party that is completed with defendant's full knowledge and complicity. Defendant's chances of having his version of events believed by the jury diminished on a direct line with the ascendancy of Green's credibility. Defendant's inability to attack Green's testimony concerning Williams, except by an undifferentiated denial, improperly prejudiced his right to defend himself.
These circumstances do not fall squarely within the letter of our criminal rules of discovery, but the goal of those rules is the essence of the present problem. "The rules of discovery as well as the rules of evidence are designed to accomplish fairness." State v. Kearney, 109 N.J.Super. 502, 505, 263 A.2d 817 (Law Div.1970). A defendant is entitled to know the State's case against him within reasonable time to permit the preparation of a defense. R. *110 3:13-3. Indeed, "[t]he principal purpose of our discovery rules is to assure the parties every legitimate avenue of inquiry prior to trial to enhance the search for the truth." State v. Burnett, 198 N.J.Super. 53, 58, 486 A.2d 846 (App.Div.1984), certif. denied, 101 N.J. 269, 501 A.2d 936 (1985).
We do not doubt the State's bona fides in asserting that Eddie Williams was unknown to it until revealed by Green at his guilty plea. From defendant's point of view, though, his problem was exactly the same, i.e., he was going to trial against material facts extremely detrimental to him, with no opportunity to investigate. It cannot be assumed that Williams either existed or if he did exist that he played the role Green described. A short adjournment might have produced Williams, who might have testified favorably to defendant, or if Williams were not located, defendant may have been able to contend he existed only in Green's imagination. It is no answer at all to say defendant would have been convicted anyway. He is entitled to a fair opportunity to present his best defense and to engender a reasonable doubt as to his guilt. Thus in State v. Williams (John), 214 N.J.Super. 12, 22, 518 A.2d 234 (App.Div.1986), we held that the trial court should have granted a short recess of trial to allow the State to explore certain evidence favorable to defendant rather than having excluded it from trial because defendant had not revealed it to the State until the day of trial. More recently, in State v. Dimitrov, 325 N.J.Super. 506, 739 A.2d 1008 (App.Div.1999), certif. denied, 163 N.J. 79, 747 A.2d 287 (2000), defendant produced a last minute exculpatory witness previously unknown to the prosecution and we held that the proper course would have been to grant a short adjournment, there a week, to allow the prosecutor to meet defendant's proofs. The preclusion of the proffered witness was improper.
In the present case there was a request to preclude testimony concerning Williams that was denied. From defendant's point of view Williams became as much of a witness against him as if Williams were testifying in person. It can be argued that the testimony concerning Williams elicited through Green was more damaging than if Williams had testified in person because of defendant's inability to cross-examine Williams. Green's testimony before the jury was ladened with references to Williams.
Contrary to the State's contention, a proffer by defendant was not essential when the request was pre-trial and the purpose of the adjournment was obvious. A defendant's right to discovery does not necessarily turn on an appraisal of the beneficial value of the material sought to be discovered. State v. Polito, 146 N.J.Super. 552, 556, 370 A.2d 478 (App.Div.1977). Our opinion in State v. Matarama, 306 N.J.Super. 6, 13-15, 703 A.2d 278 (App. Div.1997), certif. denied, 153 N.J. 50, 707 A.2d 154 (1998) (juvenile's third request for postponement of a waiver hearing so that he might secure additional expert testimony was properly denied), is factually distinguishable. The present case is more analogous to the facts in State v. Middleton, 299 N.J.Super. 22, 690 A.2d 623 (App.Div.1997), where a belated amendment of an indictment changed the date of the offense and defendant was claiming an alibi. In that circumstance the failure to grant a continuance was a mistaken exercise of discretion. "It is fundamental that a defendant may not be deprived of a defense or the opportunity to prepare and present one by reason of the State's late amendment of the indictment." Id. at 34, 690A.2d 623.
As defendant correctly points out, he has a constitutional right to compulsory process to subpoena witnesses. He also has a concomitant right to have a reasonable period of time to effect service of process and obtain compliance therewith. State v. Rodriguez, 254 N.J.Super. 339, 345, 603 A.2d 536 (App.Div.1992) (citing State v. King, 164 N.J.Super. 330, 337, 396 A.2d 354 (App.Div.1978), certif. denied, *111 81 N.J. 54, 404 A.2d 1154 (1979) and State v. Smith, 66 N.J.Super. 465, 468, 169 A.2d 482 (App.Div.1961), aff'd, 36 N.J. 307, 177 A.2d 561 (1962)). These rights become meaningless if defendant has no time prior to trial within which to investigate the witness's existence and probable testimony. The granting of an adjournment is within the discretion of the trial judge, Smith, supra, 66 N.J.Super. at 468, 169 A.2d 482, but when balancing a short delay in the start of trial against defendant's legitimate ability to present a viable defense, particularly on facts such as these, we believe the integrity of the criminal process must prevail over the administrative disruption. Middleton, supra, 299 N.J.Super. at 33, 690 A.2d 623.
In light of our decision on this issue we need not reach defendant's remaining contentions, none of which would result in acquittal if successful.
Reversed and remanded.