# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5164-17T4

K.P.[1],

     Plaintiff-Respondent,

v.

S.V.P.,

     Defendant-Appellant.

_____

       Submitted April 3, 2019 – Decided April 29, 2019

       Before Judges Koblitz and Mayer.

       On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Ocean County, Docket No. FV-15-1553-18.

       Law Offices of Jef D. Henninger, attorney for appellant (Jef D. Henninger, on the brief).

       Respondent has not filed a brief.

PER CURIAM

---

[1] We use initials to preserve confidentiality in accordance with R. 1:38-3(d)(9) and (d)(10).

In this unopposed domestic violence matter, defendant appeals from the entry of an April 26, 2018 final restraining order (FRO) and a June 25, 2018 order denying his motion for reconsideration of the FRO. We affirm.

The parties never married but lived together in a house they jointly owned for fifteen years. In 2017, the parties' relationship deteriorated and they discussed terminating their living arrangement. In severing the relationship, the parties needed to divide their interest in the house. The sale of the house caused tension between plaintiff and defendant. The friction escalated, leading both parties to apply for temporary restraining orders (TROs). Plaintiff's TRO was granted on April 4, 2018 and defendant's TRO was granted on March 1, 2018.

On April 26, 2018, the family court judge conducted one trial on both domestic violence complaints. Each party obtained an FRO. The only order on appeal is the entry of the FRO against defendant.

At trial, plaintiff was self-represented and defendant had counsel. Immediately prior to trial, the judge permitted the parties to discuss resolution of their dispute, including the disposition of the house. The matter did not resolve and proceeded to trial.

When the trial started, defendant's counsel requested an adjournment because he erroneously told a key witness to leave, believing the parties would

2

resolve their differences.  The judge asked defendant's counsel for a proffer regarding the testimony of the released witness.  However, counsel did not respond and advised "we can proceed without the witness."

Plaintiff testified defendant became irritated whenever she discussed selling the house.  On February 23, 2018, plaintiff stated defendant pushed and slapped her when she asked about listing the house for sale.  In defending herself, plaintiff explained she ripped defendant's shirt and scratched him. Defendant then called the police.  Plaintiff did not telephone the police because she was "used to being slapped by [defendant]."  Although plaintiff was arrested that evening, she was not charged.

Plaintiff also told the judge about an incident in October 2017, when defendant gave her a black eye.  At trial, plaintiff presented photographic evidence of her black eye.  On cross-examination by defendant's attorney, plaintiff denied her black eye was accidentally caused by walking into a piece of molding and reiterated that defendant caused her injury.

Plaintiff also told the judge she was willing to leave the home, but wanted the home sold or to have defendant purchase her interest in the house. Defendant refused to discuss the matter.  He repeatedly declared plaintiff would get "nothing."  According to plaintiff, defendant provoked a confrontation every

A-5164-17T4

time they discussed the house. Plaintiff testified defendant was "very good at manipulating people and controlling people." Plaintiff described defendant as a "gaslighter" because he would "provoke[ ] somebody . . . until they reach the end of the rope."

At the conclusion of the testimony, in issuing an FRO against defendant, the judge stated:

> there's clearly a problem with these two that causes there to be injuries that are observable in photographs. The [plaintiff] indicates that she got a black eye in one of these altercations and it was the [defendant's] fault. There's really no evidence to the contrary. She didn't walk into a doorknob. And when people fight, it doesn't matter who started it, you can't escalate a fight to the point where both parties are getting injured.

The judge concluded the "relationship has become toxic to the point that it looks like it's over and but for the fact that they have a house together they could just walk their separate ways." The judge found "no excuse" for defendant causing plaintiff to suffer a black eye. The judge also noted defendant was "considerably larger" than plaintiff and "could've absented himself from a volatile situation, and didn't." Based on these findings, the judge concluded defendant committed the predicate act of assault.

In rendering a decision on the need for an FRO, the judge determined "[t]his has been going on a while and it leads me to believe that there's a strong

4

likelihood that it will continue." The judge explained the parties should not be in the same house together and entered mutual restraints.

After the entry of the FRO, defendant retained different counsel. Defendant's new attorney filed a motion for reconsideration of the FRO. On reconsideration, defendant argued ineffective assistance of counsel because his trial counsel failed to present rebuttal testimony related to plaintiff's black eye. Based on the alleged ineffective assistance of his trial counsel, defendant sought to re-open the domestic violence matter.[2]

The judge denied the reconsideration motion, finding an ineffective assistance of counsel claim inapplicable in a domestic violence action. After listening again to an audio recording of the trial testimony, the judge concluded any rebuttal testimony concerning plaintiff's black eye was not new evidence. The judge found defendant's trial attorney cross-examined plaintiff about her black eye and, based on plaintiff's responses, defense counsel may have strategically declined to present rebuttal testimony.

---

[2] A claim of ineffective assistance of counsel applies only in criminal matters and is not cognizable in a civil case. Defendant fails to cite any case law supporting the right to re-open a domestic violence trial based on alleged ineffective assistance of counsel.

A-5164-17T4

On appeal, defendant argues the judge erred in: (1) denying his motion for reconsideration; (2) failing to adjourn the FRO hearing after his trial counsel dismissed a key witness; and (3) failing to articulate the elements of the alleged predicate act and why the FRO was necessary to prevent future abuse.

When reviewing "a trial court's order entered following trial in a domestic violence matter, we grant substantial deference to the trial court's findings of fact and the legal conclusions based upon those findings." D.N. v. K.M., 429 N.J. Super. 592, 596 (App. Div. 2013). We do not disturb the "factual findings and legal conclusions of the trial judge unless [we are] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Cesare v. Cesare, 154 N.J. 394, 412 (1998) (quoting Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65 N.J. 474, 484 (1974)). Deference is particularly appropriate when the evidence is testimonial and involves credibility issues because the judge who observes the witnesses and hears the testimony has a perspective the reviewing court does not enjoy. Pascale v. Pascale, 113 N.J. 20, 33 (1988).

The Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35, protects victims of domestic violence. To obtain an FRO under the PDVA, a party must satisfy the two prong test set forth in Silver v. Silver, 387 N.J.

Super. 112 (App. Div. 2006).  The trial court must find: (1) defendant committed a predicate act within N.J.S.A. 2C:25-19(a); and (2) an FRO is necessary to protect the victim from immediate danger or to prevent further abuse.  Silver, 387 N.J. Super. at 125-27.

We first consider whether the judge erred in finding defendant committed the predicate act of assault to support the issuance of the FRO.  A person is guilty of assault if he or she "attempts to cause or purposely, knowingly or recklessly causes bodily injury to another[.]"  N.J.S.A. 2C:12-1(a)(1).

The judge's finding of the predicate act of assault was based upon the unrefuted evidence.  The judge found no evidence to the contrary regarding plaintiff's testimony that defendant gave her a black eye during one of their many altercations.

We next consider defendant's argument that plaintiff failed to prove immediate danger or future abuse to justify the issuance of an FRO.  In rendering a determination on the second prong under Silver, we stated:

> This second inquiry, therefore, begins after the plaintiff has established, by a preponderance of the evidence, the commission of one of the enumerated predicate acts "upon a person protected under this act by an adult or an emancipated minor[.]"  N.J.S.A. 2C:25-19[(a)]. Although this second determination – whether a domestic violence restraining order should be issued – is most often perfunctory and self-evident, the guiding

7

standard is whether a restraining order is necessary, upon an evaluation of the factors set forth in N.J.S.A. 2C:25-29(a)(1) to -29(a)(6), to protect the victim from an immediate danger or to prevent further abuse. See N.J.S.A. 2C:25-29(b) (stating that "[i]n proceedings in which complaints for restraining orders have been filed, the court shall grant any relief necessary to prevent further abuse") ([e]mphasis added).

[Silver, 387 N.J. Super. at 127 (alterations in original).]

Of the six statutory criteria assessing the need for an FRO to prevent further abuse, the following factors were applied by the judge:

> 1) The previous history of domestic violence between the plaintiff and defendant, including threats, harassment and physical abuse;
>
> . . . .
>
> 3) The financial circumstances of the plaintiff and defendant; [and]
>
> . . . .
>
> 4) The best interests of the victim . . . .
>
> [N.J.S.A. 2C:25-29(a).]

Based on the record, we are satisfied the judge appropriately assessed plaintiff's need for an FRO to prevent further abuse. The judge noted the physical violence inflicted on plaintiff by defendant, resulting in injury. The judge concluded defendant would provoke plaintiff and then become physically

abusive, particularly when the parties discussed the sale of the house. The judge also considered the financial disparity between the parties. Defendant was able to afford an attorney while plaintiff testified she lacked funds to hire an attorney absent the sale of the house. The judge also found it was in the best interest of both parties to live apart because the relationship had become "toxic" and the confrontations, both physical and verbal, had escalated.

We next consider defendant's argument that the judge erred in denying his motion for reconsideration. When reviewing a motion for reconsideration, courts determine whether the trial court abused its discretion. Cummings v. Bahr, 295 N.J. Super. 374, 384 (App. Div. 1996). Reconsideration should be granted in "cases which fall into that narrow corridor in which either (l) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or (2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence." Fusco v. Bd. of Educ. of Newark, 349 N.J. Super. 455, 462 (App. Div. 2002) (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)).

Here, there was no new evidence regarding plaintiff's black eye. Defendant's trial attorney asked plaintiff on cross-examination whether her injury was inflicted accidentally by broken molding. Plaintiff denied her black

9

eye was attributable to anything other than an assault committed by defendant. The judge determined any explanation of plaintiff's injury presented through defendant's rebuttal testimony would not have changed his ruling. Having reviewed the record, the judge's denial of defendant's motion for reconsideration was not an abuse of discretion.

Lastly, we consider and reject defendant's argument that the judge should have adjourned the domestic violence trial because his trial attorney erroneously dismissed a witness and never consulted with defendant prior to proceeding with the trial.

Granting an adjournment is within the discretion of the trial court and the decision will not be reversed unless there is "manifest wrong or injury to the defendant . . . ." State v. Smith, 66 N.J. Super. 465, 468 (App. Div. 1961). "[C]ourts have broad discretion to reject a request for an adjournment that is ill founded or designed only to create delay, but they should liberally grant one that is based on an expansion of factual assertions that form the heart of the complaint for relief." J.D. v. M.D.F., 207 N.J. 458, 480 (2011).

Defendant's trial counsel sought an adjournment after dismissing a "key" witness. When asked by the judge for a proffer regarding the testimony of the witness, counsel ignored the judge's question and agreed to proceed without the

witness. Defendant testified, presented photographic evidence, and his attorney cross-examined plaintiff. No information was provided regarding the testimony of the dismissed witness and how that testimony might have changed the outcome of the case. Under the circumstances, we discern no abuse of discretion in the judge's denial of counsel's request to adjourn the trial.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

11